UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KURT B.,<br><br>               Petitioner,<br><br>     v.<br><br>ANDREW SAUL, Commissioner of Social<br>Security Administration,<br><br>               Respondent. | Case No. 4:19-CV-00404-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Kurt B.'s Petition for Review of the final decision of the
Commissioner of Social Security denying his application for a period of disability and
disability insurance benefits, filed on October 17, 2019. (Dkt. 1.) The Court has reviewed
the Petition, the Answer, the parties' memoranda, and the administrative record (AR),
and for the reasons that follow, will remand the decision of the Commissioner for further
proceedings.

## PROCEDURAL AND FACTUAL HISTORY

On May 4, 2016, Petitioner protectively filed an application for a period of
disability and disability insurance benefits under Title II of the Social Security Act, 42
U.S.C. §§ 401-433. The application was denied initially and on reconsideration.

**MEMORANDUM DECISION AND ORDER - 1**

Administrative Law Judge (ALJ) David Willis held a hearing on February 20, 2018. After considering testimony from Petitioner and a vocational expert, the ALJ issued a decision on August 27, 2018, finding Petitioner not disabled. (AR 13-27.)

Petitioner's request for review by the Appeals Council was denied on September 11, 2019, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Petitioner timely filed this action seeking judicial review of the ALJ's decision. The Court has jurisdiction under 42 U.S.C. § 405(g).

Petitioner alleges disability beginning February 25, 2016. At the time of the alleged onset date, Petitioner was 46 years of age. Petitioner is a military veteran with approximately thirty-years of combined service in active duty and with the Utah Army National Guard. Petitioner has a high school education and some college, with prior work experience as a mechanic and federal technician. (AR 287.) Petitioner claimed being unable to work due in part to physical injuries suffered in a work related accident on March 24, 2015, namely: a pneumothorax, multiple rib fractures with plating, and multiple wedge fractures in lumbar region. Additionally, Petitioner claimed an inability to work due to symptoms related to Post-Traumatic Stress Disorder (PTSD) including: social anxiety, agitation around people, and anger issues. (AR 100.)

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*,

**MEMORANDUM DECISION AND ORDER -** 2

139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012).

## THE ALJ'S DECISION

MEMORANDUM DECISION AND ORDER - 3

The ALJ applied the five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found Petitioner had not engaged in substantial gainful activity since the alleged onset date. The ALJ found at step two that Petitioner had the following medically determinable, severe impairments: degenerative disc disease; right shoulder osteoarthritis; and PTSD with social anxiety. (AR 16.) At step three, the ALJ concluded Petitioner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

The ALJ next assessed the limitations caused by Petitioner's impairments and determined Petitioner retained the RFC to perform light work with some physical limitations and the following mental limitations: occasionally able to have incidental contact with supervisors, coworkers, and members of the general public. (AR 18-19.)[1] Interaction with members of the general public, the ALJ stated, should not be required as part of the claimant's employment, and incidental contact with coworkers was defined as requiring no teamwork-type tasks, but requiring only standalone tasks. The ALJ found Petitioner was expected to be off task five percent of an eight-hour workday.

At step four, the ALJ determined Petitioner was unable to perform any past relevant work. (AR 24.) Therefore, the ALJ moved to step five where he found that,

---

[1] Petitioner does not challenge the ALJ's determinations regarding his physical impairments. Accordingly, the Court addresses only Petitioner's arguments concerning the ALJ's consideration of his mental impairments.

based on the Petitioner's age, education, work experience, RFC, and the testimony of the

vocational expert, Petitioner could perform the requirements of other work existing in

significant numbers in the national economy such as marker, housekeeping/cleaner, and

mail clerk. (AR 25-26.) Accordingly, the ALJ determined Petitioner not disabled.

## ISSUES PRESENTED[2]

Petitioner raises the following issues as grounds for remand:

1.      Whether the ALJ erred by improperly weighing the medical opinions.

2.      Whether the ALJ erred in dismissing the VA disability rating.

3.      Whether the ALJ erred in evaluating Petitioner's subjective complaints.

4.      Whether the ALJ erred in assessing Petitioner's RFC.

## DISCUSSION

**1.      The ALJ Erred in Evaluating the Medial Opinion Evidence.**

Petitioner challenges the ALJ's evaluation of the medical opinions relating to his

mental impairments, arguing the ALJ misstated the evidence in the record and failed to

properly explain the weight given to the medical opinions. (Dkt. 15 at 16-20.)

Respondent contends that the ALJ reasonably evaluated the opinion evidence and

incorporated mental limitations consistent with the opinions in the RFC assessment. (Dkt.

19 at 9-11.)

---

[2] The issues are listed in an order different than presented by Petitioner for logistical reasons.
The Court will not address the second, third, and fourth issues because, as explained more fully
below, resolution of the first issue obviates the need to address the remaining issues.

**MEMORANDUM DECISION AND ORDER - 5**

### A.      Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison*, 759 F.3d at 1012.

In evaluating medical opinions, the ALJ must consider: 1) whether the source examined the claimant; 2) the length, frequency, nature, and extent of any treatment relationship; 3) the degree of support the opinion has, particularly from objective medical evidence; 4) the consistency of the opinion with the record as a whole; 5) the source's specialization; and 6) "other factors." 20 C.F.R. § 404.1527(c); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Orn*, 495 F.3d at 631-32; *Revels*, 874 F.3d at 665 (citing 20 C.F.R. § 404.1527(c)(1)–(2), (f)) (The § 1527 factors are used to evaluate the opinions of medical providers who are acceptable medical sources and those who are not.).[3]

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."

---

[3] The regulations governing the evaluation of medical evidence were amended for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Petitioner's claim was filed on May 4, 2016, the Court applies the case law and regulations effective prior to the March 27, 2017 amendments. *See* 20 C.F.R. §§ 404.1527.

*Trevizo*, 871 F.3d at 675 (quotation omitted). Where the opinion of a treating or examining physician is contradicted, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also Garrison*, 759 F.3d at 1012.

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted). An ALJ errs by rejecting "a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his or her] conclusion." *Id.* at 1012–13.

The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of ... a treating physician." *Lester*, 81 F.3d at 831.

### B.     The Medical Opinion Evidence

The ALJ assigned considerable weight to the opinions of VA examining physician Kate Blackburn, M.D., and the State agency consultative examining psychologist Jerry Doke, Ph.D. (AR 23.) The ALJ also gave considerable weight to certain findings and opinions of the State agency consulting psychologists, Michael Dennis, Ph.D. and David

Stanford, Ph.D. (AR 23-24.) For the reasons that follow, the Court finds the ALJ erred by mischaracterizing the record and failing to sufficiently explain the basis for his assessment of the medical opinion evidence.

### i.    Dr. Blackburn

On July 5, 2017, Dr. Blackburn completed a VA Compensation and Pension Examination (C&P) wherein she diagnosed Petitioner with PTSD. (AR 1180-1195.) In making her assessment, Dr. Blackburn reviewed Petitioner's mental health records, which notably revealed that Petitioner had not previously been found to meet all of the criteria for a PTSD diagnosis.

Prior to Dr. Blackburn's examination, VA records show that Petitioner had been diagnosed with 1) "other specified trauma and stressor related disorder" by Jessica Graham, Ph.D., a clinical psychologist, on August 18, 2015; and 2) a traumatic brain injury (TBI) by Abhijit Kulkarni, M.D., a neurologist, on September 17, 2015. (AR 768, 772, 774, 782.) Both Drs. Graham and Kulkarni reported that Petitioner had maintained fulltime civilian employment with the Utah Army National Guard for the preceding ten years. (AR 771, 775.) In February of 2016, Dr. Graham and Dr. Kulkarni each conducted reviews of their initial 2015 examinations and reaffirmed their initial diagnoses. (AR 777, 781) (On February 8, 2016, Dr. Graham found Petitioner's had "significant clinical distress" and more severe symptoms, but that his current presentation "continue[d] to endorse sub-clinical levels of PTSD symptoms" and that his symptoms are "consistent with a diagnosis of other specified trauma and stressor related disorder" at a moderate level.); (AR 769) (On February 10, 2016, Dr. Kulkarni found that Petitioner "continues to

have a diagnosis of mild TBI during service" and that his TBI had "stabilized at this point.")

In 2017, however, Dr. Blackburn concluded Petitioner "*does* have a diagnosis of PTSD that is no longer subsyndromal or subthreshold" and that her "current diagnosis of PTSD is a direct extension of and worsening of the symptoms associated with his previous diagnosis of subthreshold PTSD i.e. other specified trauma and stressor related disorder." (AR 1195) (emphasis added.) Dr. Blackburn stated: "[t]his is an extension of and represents an exacerbation/worsening of his previously service-connected diagnosis of other specified trauma and stressor related disorder." (AR 1180.)

Dr. Blackburn found Petitioner's history of both mild traumatic brain injury (TBI) and PTSD presented overlapping symptoms, and that it was impossible to differentiate occupational and social dysfunction attributable to each disorder separately without resorting to speculation. Dr. Blackburn determined Petitioner's level of occupational and social impairment with regard to his mental health diagnoses resulted in a "reduced" level of reliability and productivity. (AR 1181.)

### ii.   Dr. Doke

On September 27, 2016, Dr. Doke performed a mental status examination of Petitioner. (AR 1079-1083.) Dr. Doke diagnosed Petitioner with PTSD, concluding:

> I do not believe that this man is impaired in his ability to perform work related mental activities such as understanding, remembering, sustaining concentration or persistence. He, however, will have difficulty interacting socially and adaptability due to his anger and hyper sensitivity to authority and symptoms of PTSD.

(AR 1083.) Dr. Doke observed Petitioner to be "rather abrasive" at first, and "agitated

and angry" about the treatment received from both the VA and worker's compensation proceedings, but that his attitude and behavior were appropriate and cooperative as the interview progressed. (AR 1081.)

### iii.    The State Agency Consultants

On November 9, 2016, Dr. Dennis performed the initial State agency disability determination, finding Petitioner's mental impairment caused a moderate difficulty in Petitioner's ability to maintain social functioning; and mild limitations in maintaining concentration, persistence, or pace. (AR 102, 120.) Dr. Dennis stated that, "due to his PTSD symptoms which include social anxiety, agitation around people and anger issues, [claimant] would be limited to jobs with no more than occasional public interaction." (AR 105, 121.)

On February 13, 2017, Dr. Sanford conducted the State agency disability determination at the reconsideration level and made findings similar to those made by Dr. Dennis. (AR 130-131, 136-137.) Namely, that Petitioner's mental impairment caused a moderate limitation in Petitioner's ability to interact with others and mild limitations in the other paragraph B criteria; and that Petitioner should be limited to no more than occasional social interactions due to his PTSD symptoms. (AR 131, 136-137.)

Drs. Dennis and Sanford both gave great weight to Dr. Doke's opinion, stating Dr. Doke's assessment provided "good insight into [claimant's] current mental health conditions and limitations." (AR 104, 132.) Notably, the State agency consulting evaluations and Dr. Doke's examination were all completed prior to Dr. Blackburn's evaluation and diagnosis of PTSD.

**MEMORANDUM DECISION AND ORDER -** 10

C.      The ALJ's Decision

The ALJ's discussion of the medical opinion evidence relating to Petitioner's

mental impairments included:

> In terms of mental symptoms, the C&P examination also noted that the
> claimant exhibited anxiety and suspiciousness, presenting as irritable, albeit
> cooperative and attentive, and Jessica A. Graham, Ph.D., assessed the
> claimant as meeting the criteria for PTSD, consistent with previous mental
> health providers and consistent with the claimant's historical diagnosis of a
> traumatic brain injury. (See 3F/369). However, Dr. Graham specifically
> noted that the claimant, over the previous 10 years, had maintained full-
> time employment in the civilian sector through a dual status position as a
> federal technician, working as a mechanic, not stopping until his March
> 2015 accident when the axel fell on him (Exhibit 3F/16-23, 29-96). As
> such, consistent with the claimant's testimony, he remained able to work,
> and did so on a full-time basis, for more than a decade at the substantial
> gainful activity level despite a history of previous injuries and despite a
> history of PTSD.

(AR 21.) The ALJ went on to state:

> Turning back to the claimant's PTSD, social anxiety, and historical
> diagnosis of a traumatic brain injury, as already discussed related to the
> C&P examination in February 2016, Dr. Graham specifically noted the
> claimant's excellent work history for more than a decade subsequent to his
> PTSD diagnosis and diagnosis of a traumatic brain injury. (Exhibit 3F/16-
> 23, 29-96). Psychiatrist, Kate Blackburn, M.D., performed another C&P
> examination in July 2017, describing the claimant's service connected
> PTSD (and overlapping history of traumatic brain injury) symptoms as
> involving anxiety, suspiciousness, mild memory loss, and with
> occupational and social adjustment slightly impaired with occasional
> decrease in work efficiency, albeit generally functioning satisfactorily with
> routine behavior. She described impulse control as "fair" and conversation
> as "normal." In reviewing the claimant's long military and deployment
> history and 2016 records from neurologist, Dr. Kulkarni, both she and the
> claimant agreed that his history of traumatic brain injury "is stabilized" at
> this point, showing "no objective cognitive defects." She ultimately
> concluded that the claimant's PTSD had progressed in that "he is clearly
> avoidant now," has difficulty with authority, tends to obtain nonrestorative
> sleep of 4-6 hours per night, awakening shaken and agitated because of
> nightmares, and is irritable during the day as a result. "He made great effort

to control his irritability and noted it was difficult for him" (Exhibit 16F/1-16).

The undersigned also notes that the claimant was observably irritated at the hearing and appeared to have some difficulty keeping it under control but appeared to be putting forth an effort to do so. The undersigned has assessed considerable social limitations accordingly. Such assessment is also consistent with the findings, observations, and conclusions of consultative psychological examiner, Dr. Doke, who similarly concluded that the claimant exhibited no significant cognitive deficits but "will have difficulty interacting socially [and adaptability] due to his anger and hypersensitivity to authority and symptoms of PTSD" (Exhibit 7F/5). Considerable weight is given to the findings and conclusions of both examiners, as the undersigned finds their opinions consistent with other substantial medical evidence of record.

(AR 23.) As to the State agency determinations, the ALJ's decision reads:

[T]he undersigned gives considerable weight to the findings and opinions of the state agency psychological consultants that the claimant has up to moderate limitations interacting with others but no more than mild limitations in the other 'paragraph B' domains of functioning. Similarly, the undersigned gives considerable weight to the findings and opinions of the State agency medical consultants that the claimant is able to perform a limited range of light work activity similar to that assessed in this decision (Exhibit 6A).

(AR 24) (citing specifically to Dr. Sanford's report, Ex. 6A).

### D.    Analysis

The Court finds the ALJ erred in evaluating the medical opinion evidence in two respects. First, by misstating and mischaracterizing the record with regard to Petitioner's PTSD diagnosis and work history. Second, by failing to articulate sufficient reasons supported by substantial evidence for the weight given to the medical opinions.

### i.    The ALJ Mischaracterized the Opinion Evidence

The ALJ misstated and mischaracterized the opinion testimony and the record

concerning Petitioner's PTSD diagnosis and work history. The ALJ's decision incorrectly states that "Dr. Graham assessed the claimant as meeting the criteria for PTSD." (AR 21.)[4] However, Dr. Graham did not diagnose Petitioner with PTSD. Contrary to the ALJ's statement, the medical records indicate that Dr. Graham diagnosed Petitioner in 2015 and 2016 with "other specified trauma and stressor related disorder," not PTSD. (AR 772.) Indeed, Dr. Graham opined that Petitioner's presentation in 2016 "continue[d] to endorse *sub-clinical levels* of PTSD symptoms" and that Petitioner's symptoms were instead "consistent with a diagnosis of other specified trauma and stressor related disorder." (AR 777) (emphasis added); (AR 781) ("His current presentation warrants this diagnosis due to the subclinical nature of his reported PTSD symptoms, but significant clinical distress.").

Instead, Petitioner was diagnosed with PTSD by Dr. Doke in 2016, and again by Dr. Blackburn in 2017, both occurring after Dr. Graham's examinations. (AR 1082, 1195.) The ALJ therefore misstated and mischaracterized the record and Dr. Graham's

---

[4] In reviewing the ALJ's statement, the Court considered Dr. Graham's finding that Petitioner had met some, but not all, of the PTSD criteria. (AR 776-777.) However, the ALJ did not limit or condition his characterization of Dr. Graham's assessment to *some* of the PTSD criteria. The ALJ stated that Dr. Graham "assessed the claimant as meeting *the* criteria for PTSD," meaning all of the criteria. The ALJ went on find that Dr. Graham's assessment was "consistent with previous mental health providers," citing records by other non-accepted medical sources purporting to diagnose Petitioner with PTSD. (AR 21) (citing AR 1056; *see also* 20 C.F.R. §§ 404.1527, 416.927 (opinion by an acceptable medical source is given more weight than that of other sources.). The ALJ's representation of Dr. Graham's assessment was not limited to finding that Petitioner met only *some* of the PTSD criteria. Instead, the ALJ erroneously characterized Dr. Graham's opinion, and other records, as having established that Petitioner met all of the PTSD criteria prior to the diagnoses by Dr. Blackburn and Dr. Doke.

findings regarding Petitioner's PTSD.

Consequently, the ALJ erred by relying on his own misrepresentations of Dr. Graham's opinion and the record in concluding that "Dr. Graham specifically noted claimant's excellent work history for more than a decade subsequent to his PTSD diagnosis," and that Petitioner maintained full-time employment for a decade "despite a history of PTSD." (AR 21, 23.) While Dr. Graham noted that Petitioner had maintained fulltime employment at the Utah Army National Guard for ten years, Petitioner had not been diagnosed with PTSD by Dr. Graham or any other acceptable medical source at the time Dr. Graham rendered her findings.[5] The ALJ therefore erred in basing his conclusions regarding Petitioner's PTSD history and ability to work on an incorrect assessment of the record.

The error extends beyond the ALJ's evaluation of the medical opinion evidence. The ALJ's conclusion that Petitioner remained able to work despite a PTSD diagnosis, which had not been made, influenced and contributed to the ALJ's determinations

---

[5] The ALJ cited, without explanation, counseling notes of clinical observations from an "educational encounter" with Petitioner in January 2015 listing PTSD as a diagnosis. (AR 21) (citing AR 1056.) The notes were compiled by a psychology intern, peer support specialist, and a licensed social worker. Although the counseling notes were cosigned by a supervising clinical psychologist, they are not records of a PTSD diagnosis made by an acceptable medical source and are not afforded the same weight or deference as a diagnosis by a treating or examining physician. *See* Social Security Ruling ("SSR") 06–03p (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)); *see also Thomas v. Astrue*, 2009 WL 151488, at *3 (C.D. Cal. Jan. 21, 2009) ("[T]he reports of licensed clinical social workers are considered 'other sources' of evidence, not evidence from an 'acceptable medical source.'"). The ALJ erred by failing to explain or discuss the sources of these notes that he relied upon in reaching his conclusions regarding Petitioner's PTSD and work history.

regarding Petitioner's symptom statements and the RFC. Based on this record, the Court

cannot determine whether the ALJ's disability determinations were supported by

substantial evidence. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th

Cir. 2014) (When the "record before agency does not support agency action…or

reviewing court simply cannot evaluate challenged agency action on basis of record

before it, proper course…is to remand to agency for additional investigation or

explanation."). That is not to say that an accurate assessment of Dr. Graham's opinion

and the other records would not support the findings and determinations made by the

ALJ. Such a determination, however, is for the ALJ to make in the first instance. *See*

*Brown-Hunter*, 806 F.3d at 496.

> ## ii.    The ALJ Failed to Properly Evaluate the Opinion Evidence

The ALJ erred also by failing to set forth sufficient reasons supported by

substantial evidence for the weight given to the medical opinions. In general, the ALJ's

decision failed to properly explain the bases and reasons for his evaluation of opinion

evidence.

The ALJ gave considerable weight to the opinions of Drs. Blackburn and Doke

stating their opinions were "consistent with other substantial medical evidence in the

record." (AR 23.) The ALJ did not, however, identify or discuss what medical evidence

in the record supported his conclusions, leaving the Court to guess at the bases for the

ALJ's evaluation.[6] The Court is therefore unable to surmise what records the ALJ relied on and whether the ALJ accurately assessed those medical records when he evaluated the opinion evidence, particularly given the mischaracterizations of the record noted elsewhere in the ALJ's decision.

More importantly, the ALJ did not address an apparent inconsistency in the opinion evidence. In 2017, Dr. Blackburn found Petitioner's PTSD symptoms were worsening in comparison to the previous medical opinions, namely Dr. Graham's evaluations. (AR 1180, 1195.) While the ALJ noted Dr. Blackburn's findings that Petitioner's PTSD symptoms had "progressed," the ALJ did not discuss whether that progression resulted in functional limitations different in degree of severity from those found by the medical examiners. The ALJ simply concluded, without explanation, that the opinions of Drs. Blackman and Doke were consistent with the medical evidence in the record. (AR 23.)

The ALJ also misstated Dr. Blackburn's opinion describing Petitioner's PTSD symptoms to involve "occupational and social adjustment slightly impaired with *occasional* decrease in work efficiency." (AR 23) (emphasis added.) However, Dr.

---

[6] Similarly, the ALJ gave considerable weight to certain findings and opinions of the State agency psychological consultants but provided no basis or reasons for doing so. (AR 24.) The ALJ erred by failing to explain the weight given to these opinions. *See* SSR 96-6p, 1996 WL 374180 (July 2, 1996) (ALJ must explain the weight given to State agency medical and psychological consultants opinions regarding the nature and severity of an individual's impairment in their decisions.).

Blackburn concluded Petitioner's level of occupational and social impairment with regard to his mental health diagnosis resulted in a *reduced* level of reliability and productivity. (AR 1181) (emphasis added.) Incidentally, Dr. Graham's earlier examination found Petitioner's occupational and social adjustment relating to his mental diagnosis caused an "*occasional* decrease in work efficiency." (AR 773.)[7] The differing verbiage has relevance with regard to the VA disability ratings for mental disorders, which are what both Drs. Blackburn and Graham were assessing.[8]

While the VA standards are distinct from and non-binding on the SSA disability determination, the Court notes the discrepancy in terminology here, because the ALJ's misstatement is not wholly without meaning. The misstatement also further evidences the inconsistency in the medical opinions and the ALJ's failure to adequately address Dr. Blackburn's findings of worsening PTSD symptoms and any resulting occupational limitations. Dr. Blackburn's finding of a *reduced* level of reliability and productivity suggests Petitioner's mental impairments result in occupational and social limitations below the *occasional* level found previously by Dr. Graham. (AR 118.) The ALJ erred by misstating the record and failing to discuss or reconcile the apparent inconsistency

---

[7] Dr. Graham found Petitioner's occupational and social adjustment relating to his mental diagnosis caused an "*occasional* decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation." (AR 773.)

[8] Under the VA's schedule of ratings for mental disorders, an occasional occupational and social impairment warrants a rating of thirty, whereas a reduced level yields a rating of fifty. 38 C.F.R. § 4.130.

**MEMORANDUM DECISION AND ORDER - 17**

between Dr. Blackburn's findings of reduced limitations in 2017 and the previous findings of the other mental health examiners of only occasional limitations.

The ALJ is tasked with "resolv[ing] conflicts in the testimony" and "ambiguities in the record." *Treichler*, 775 F.3d at 1098. Here, however, the ALJ failed to identify the records he relied upon; misstated the opinion evidence; provided no explanation for concluding Dr. Blackburn's opinion was consistent with the other medical evidence despite finding worsening PTSD symptoms; and failed to reconcile the differences between the opinions. *Garrison*, 759 F.3d at 1012-13 ("An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings.'"). Consequently, the ALJ's conclusion that the resulting occupational limitations of Petitioner's PTSD impairment were consistent among the medical examiners and incorporated into the RFC is not supported by substantial evidence. (AR 23.) This error is compounded by the ALJ's reliance on the other misrepresentations of the opinion evidence and record discussed previously.

Respondent maintains the ALJ did not err, because the limitations contained in the opinion evidence are included in the RFC assessment. (Dkt. 19 at 9-10.) However, the Court cannot make that determination here given the mischaracterizations of medical records and the other errors identified herein that underlie the ALJ's RFC determination and other findings. In particular, the ALJ relied heavily throughout his decision on a fact unsupported by the evidence in the record that Petitioner continued to work for ten years despite a PTSD diagnosis. The ALJ also failed to identify the medical evidence he found

to be consistent with the opinions of Drs. Blackburn and Doke and failed to reconcile the indications of Petitioner's worsening PTSD symptoms and more restrictive occupational limitations contained in Dr. Blackburn's opinion. Based on this record, the Court cannot determine whether the limitations in the RFC properly addressed Petitioner's mental health impairments or that the ALJ's RFC assessment is supported by substantial evidence in the record.

In so finding, the Court does not decide whether Petitioner was disabled under the SSA. That is for the ALJ to determine in the first instance. Indeed, the Court notes that there are records supporting the ALJ's disability determination. Because the error found here involved mischaracterizations of the record which served as the underpinnings for the ALJ's other findings and conclusions, it is necessary to remand the case for the ALJ to make the disability determinations based on an accurate assessment of the record.

## 2.    Additional Assignments of Error

Petitioner separately challenges the ALJ's assessment of his symptom statements; the RFC determination; and treatment of the VA disability rating. (Dkt. 15.) The errors discussed above, however, impacted the ALJ's consideration of Petitioner's symptom statements, the RFC assessment, and treatment of the VA rating. The ALJ's disability findings and determinations were influenced by the mischaracterizations of the medical opinion evidence and record relating to Petitioner's PTSD and work history. Because the ALJ must therefore first reconsider on remand the medical opinion evidence and potentially reassess Petitioner's symptom statements, the RFC assessment, and VA disability rating, the Court will not address Petitioner's remaining challenges on appeal

here.

### 3.    Remand

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018) (citing *Treichler*, 775 F.3d at 1099). "The decision of whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

Here, Petitioner asks the Court to remand for an award of benefits on the basis of the present record. (Dkt. 15, 20.) Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").

However, where the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. *Revels*, 874 F.3d at 668; *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Harman*, 211 F.3d at 1179-81. Remand is also warranted where "the record as a whole creates serious doubt as to whether the [Petitioner] is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014); *see also Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004) (Where it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly

evaluated, remand is appropriate.).

The Court finds the "rare circumstances that result in a direct award of benefits are not present in this case." *Leon*, 880 F.3d at 1147. Here, remand for further administrative proceedings is appropriate and would serve a meaningful purpose as there is serious doubt as to whether Petitioner is in fact disabled when viewing the record as a whole. *Brown-Hunter*, 806 F.3d at 495. Moreover, further administrative review could remedy the ALJ's errors. *Revels*, 874 F.3d at 668; *McLeod*, 640 F.3d at 888; *Harman*, 211 F.3d at 1179-81. The Court will therefore order remand so that the record can be properly evaluated and the disability determinations be made by the ALJ in the first instance based on an accurate assessment of the records.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Petitioner's Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: March 22, 2021

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**